[Cite as *Defiance Cty. Bd. of Health v. McCalla*, 2012-Ohio-4107.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

**BOARD OF HEALTH, DEFIANCE COUNTY,**

    **PLAINTIFF-APPELLEE,**               **CASE NO. 4-12-07**

    **v.**

**EDWARD MCCALLA, ET AL.,**              **O P I N I O N**

    **DEFENDANTS-APPELLANTS.**

**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 11CV41575**

**Judgment Affirmed**

**Date of Decision:    September 10, 2012**

**APPEARANCES:**

    *Tim Holtsberry* **for Appellants**

    *Morris J. Murray and Russell R. Herman* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellants Edward McCalla ("McCalla") and Scott Hilbert ("Hilbert") appeal the judgment entries of the Defiance County Common Pleas Court dated November 14, 2011, December 13, 2011, and January 17, 2011, awarding judgments in favor of plaintiff-appellee Board of Health of Defiance County (hereinafter "Board of Health") asserting various procedural and substantive issues for our review. For the reasons that follow, we affirm the judgments of the trial court.

{¶2} The facts relevant to this appeal are as follows. The property at 2738 Buckskin Road in Hicksville, Ohio (hereinafter "Buckskin Rd. property"), went through foreclosure and was acquired by First Place Bank on the sale date of September 30, 2008.

{¶3} First Place Bank employed Leonard L. Guilford ("Guilford") as realtor for the Buckskin Rd. property. Guilford then employed Shannon Watson ("Watson"), an excavating Contractor licensed to install septic systems in Ohio, to inspect the Buckskin Rd. property's septic system. Watson inspected the system and found that the septic tank was in disrepair, that the lid on the septic tank was falling in and that there was a hole in the tank that he described as three feet by five feet.[1] According to Watson, the septic tank needed replaced and a secondary

---

[1] As to the three people that testified to the size of the hole, all three gave a different account. Watson asserted that the hole was three feet by five feet, Guilford asserted that the hole was approximately two feet

treatment system needed to be installed in order to make the property compliant with current laws. Watson then notified Guilford and the Board of Health that the septic system was a failed system.

{¶4} On April 7, 2009, Lennis J. Prigge ("Prigge") of the Board of Health did an inspection on the Buckskin Rd. property "for the replacement of the existing collapsed septic system." Prigge informed Guilford via a letter dated April 8, 2009, of the next steps to take in getting the property in compliance with the code. Prigge also notified Guilford that the septic system would have to be replaced before anyone could live on the Buckskin Rd. property.

{¶5} In early July of 2009, Guilford sold the Buckskin Rd. property to John McCalla, the defendant's son. Guilford informed John that the septic system would need to be replaced before anyone could reside on the Buckskin Rd. property.

{¶6} On or about November 4, 2009, Shannon Watson observed McCalla and his son John installing what Watson thought was a 1500 gallon septic tank on the property. Watson then called the Board of Health because he thought the McCallas were illegally installing a septic tank without a license.

{¶7} Prigge came out to the property just as McCalla and his son John were finishing putting the septic tank into the ground. According to Prigge, the septic

___

by two feet, and McCalla testified that the hole was triangular in shape and no more than fifteen to eighteen inches.

-3-

tank that they installed did not comply with new legislation regarding sewage systems, and it did not comply with old legislation as the septic tank installed was merely one component of a larger septic system that was otherwise not functional and not in compliance with the law.

{¶8} On or about February 8, 2010, John McCalla applied for a variance with the Board of Health for his septic tank. The Board of Health denied that variance. A copy of this denial was sent to John on February 26, 2010.

{¶9} On or about June 17, 2010, the property was transferred from John to his father, McCalla. In July of 2010, McCalla began leasing/renting the Buckskin Rd. property to Hilbert for $525 per month.

{¶10} On December 30, 2010, a warning letter was sent to McCalla informing him that enforcement actions would commence if McCalla did not either correct the household sewage treatment or vacate the subject premises of renters.

{¶11} On May 3, 2011, McCalla filed another request for a variance with the Board of Health, asserting that "due to special conditions that include the limited space available on this lot for the installation of a filter bed and the unnecessary hardship created by imposing a whole new septic system, I am asking the Board to accept the work I have done as complete * * *."

{¶12} On June 13, 2011, a hearing was held on McCalla's variance request. Ultimately the Board of Health granted that variance request with special conditions requiring McCalla to comply with the following requirements within 90 days: McCalla had to pay for a site evaluation, McCalla needed to be granted a permit for the new tank, as he was also the adjacent landowner McCalla needed to grant a perpetual easement for the off lot drainage, and McCalla needed to install a secondary treatment system.

{¶13} On June 17, 2011, seeing that Hilbert had not vacated the Buckskin Rd. property, the Board of Health sent another letter to McCalla stating that the Board of Health had "issued [McCalla] orders to abate the sewage nuisance at 2738 Buckskin Rd. Hicksville, Oh. The house cannot be lived in without a septic system."

{¶14} The 90-day period in the conditional variance passed with nothing being done to the property by McCalla.

{¶15} On October 19, 2011, the Defiance County Board of Health filed a complaint against McCalla and "unknown tenant" of the Buckskin Rd. property—Hilbert—, requesting a preliminary and a permanent injunction. (Doc. 1). The complaint alleged that McCalla was in violation of R.C. provisions 3718.011, R.C. 3718.10, 3718.08, various provisions of the Ohio Administrative Code, and provisions of the Defiance County Sewage Treatment System Regulations

(hereinafter "Defiance County regulations") 3701-29-02, 3702-29-04, as his household sewage treatment was a "nuisance." (*Id.*) The complaint also alleged that McCalla illegally installed a septic tank. (*Id.*) The Board of Health sought, *inter alia*, for McCalla to immediately cease leasing/renting the premises, to have all solid waste removed from the premises, and to have fines imposed for the above violations of law. (*Id.*)

{¶16} On October 19, 2011, the Board of Health also filed a motion for a temporary restraining order ("TRO") seeking to restrain McCalla from renting/leasing or residing in the subject property, and further seeking to require McCalla to notify Hilbert to vacate the premises until the sewage treatment system had been constructed. (Doc. 2).

{¶17} On October 27, 2011, McCalla filed a motion to dismiss the action pursuant to Civil Rules 12(b)(1) and 12(b)(6), arguing that the court did not have subject matter jurisdiction and arguing that the Board of Health had failed to state a claim upon which relief could be granted. (Doc. 5). In addition, McCalla filed a memorandum in opposition to the Board of Health's motion for a TRO. (Doc. 4).

{¶18} On October 28, 2011, a hearing was held on the Board of Health's motion for a TRO. (Doc. 9). On October 31, 2011, the court filed a judgment entry denying the TRO. (*Id.*) It was further ordered that "the request for a

permanent injunction be consolidated for trial on the merits and that trial to the court be had on December 16, 2011." (*Id*.)

**{¶19}** On November 4, 2011, the Board of Health filed a response to McCalla's motion to dismiss. (Doc. 8).

**{¶20}** On November 14, 2011, the court filed a judgment entry overruling McCalla's motion to dismiss. (Doc. 11). This judgment entry is the first subject of this appeal.

**{¶21}** On November 28, 2011, McCalla and Hilbert filed answers to the earlier complaint of the Board of Health accompanied by a demand for a jury trial. (Docs. 14, 15).

**{¶22}** On December 8, 2011, the Board of Health filed a motion for default and summary judgment, and a response to the jury demand. (Doc. 16).

**{¶23}** On December 13, 2011, McCalla and Hilbert filed a memorandum in opposition to the Board of Health's motion for default judgment and a response to the motion for summary judgment. (Doc. 17).

**{¶24}** On December 13, 2011, the court filed a judgment entry denying the Board of Health's motion for default judgment and denying the Board of Health's motion for summary judgment. (Doc. 18). The entry further denied McCalla's jury demand stating that McCalla was "not entitled to a jury on the equitable claim for injunction." (*Id*.) This judgment entry is the second subject of this appeal.

{¶25} On December 16, 2011, the case proceeded to a bench trial wherein Guilford, Watson, McCalla, Prigge, and Hilbert testified. Rebecca Fuggit of the Ohio Department of Health-Bureau of Environmental Health also testified, stating that as it is, McCalla did not have a septic system, he merely had a septic tank which was one component of a system. Fuggit also clarified the State's stance that McCalla's lack of a septic system was a public health nuisance.

{¶26} At the end of the hearing, McCalla and Hilbert submitted a trial brief in lieu of a closing argument. After the court and the Board of Health reviewed the brief, the Board of Health had an opportunity to respond.

{¶27} Ultimately the court found that the septic tank was not a septic system as no secondary sewage treatment system had been installed and the court found that the non-functioning septic system was a public health nuisance. The court then issued a permanent injunction prohibiting occupation of the property in question until a proper and legal home sewage treatment system was installed. This was memorialized in a judgment entry filed December 21, 2011. (Doc. 22).

{¶28} The court delayed disposition to hear arguments on what sanctions and penalties were proper to impose on McCalla given the violations. The court also expected to hear arguments pertaining to McCalla's claim that there was a lack of due process in his variance request, arguments pertaining to whether any purported lack of due process prevented this matter from being prosecuted, and

arguments as to whether any purported lack of due process had any bearing on this matter. (*Id.*)

{¶29} On January 11, 2012, at the scheduled disposition hearing, the parties stipulated to a total cumulative fine of $365,000 for McCalla, and further stipulated that the Board of Health would take no actions to collect said fines so long as McCalla complied with the court's permanent injunction. This was memorialized in a judgment entry filed January 17, 2012. This judgment entry is the third subject of this appeal.

{¶30} McCalla then filed this appeal, asserting the following assignments of error for our review arising out of the November 14, 2011, December 13, 2011, and January 11, 2012 judgment entries.[2]

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ERRED IN NOT GRANTING APPLLANT'S MOTION TO DISMISS AS IT LACKED JURISDICTION TO HEAR THE CASE AS ALL STATUTORILY REQUIRED ADMINISTRATIVE REMEDIES HAD NOT BEEN EXHAUSTED.**

**ASSIGNMENT OF ERROR 2**
**THE TRIAL COURT ERRED IN NOT FINDING THAT APPELLANT'S DUE PROCESS RIGHTS HAD BEEN VIOLATED AS APPELLEE HAD FAILED TO GIVE THE APPELLANT HIS STATUTORILY REQUIRED NOTICE OF ADMINISTRATIVE REMEDIES.**

---

[2] The notice of appeal establishes that both McCalla and Hilbert are challenging the trial court's judgment; however, the assignments of error and arguments in the brief primarily pertain to McCalla's rights. The Board of Health does not challenge Hilbert's standing to raise any of the claims alongside McCalla, and therefore we do not address this issue. Instead, we note that we are aware that Hilbert is joining in McCalla's arguments and when the assignments of error are overruled, they are overruled as to Hilbert as well.

Case No. 4-12-07

**ASSIGNMENT OF ERROR 3**
**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR DISMISSAL FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT ERRED IN DENYING APPELLANT A JURY TRIAL AS REQUESTED.**

**ASSIGNMENT OF ERROR 5**
**THE TRIAL COURT ERRED IN MISAPPLYING THE NEW LAW IN R.C. CHAPTER 3718 ENACTED FROM SUBSTITUTE SENATE BILL 110.**

**ASSIGNMENT OF ERROR 6**
**THE APPLICATION OF THE NEW STATUTE HAS RESULTED IN A TAKING OF PROPERTY IN VIOLATION OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION.**

**ASSIGNMENT OF ERROR 7**
**THE TRIAL COURT ERRED IN LEVYING AN EXCESSIVE FINE NOT IN ACCORDANCE WITH R.C. CHAPTER 3718.**

**ASSIGNMENT OF ERROR 8**
**THE TRIAL COURT'S INTERPRETATION OF R.C. 3718.011 WOULD MEAN THAT SECTION OF THE CODE VIOLATES ARTICLE II SECTION 28 OF THE OHIO CONSTITUTION.**

{¶31} In the interests of clarity we elect to address some of the assignments of error together and some of the assignments of error out of the order in which they were raised.

-10-

*Third Assignment of Error*

**{¶32}** In McCalla's third assignment of error, McCalla argues that the trial court erred in denying his motion to dismiss for failure to state a claim upon which relief could be granted.

**{¶33}** A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests whether the complaint is sufficient. *State ex rel. Hanson v. Guernsey Cty. Bd. Of Commrs.*, 65 Ohio St.3d 545, 548 (1992). In considering a Civ.R. 12(B)(6) motion to dismiss, a trial court may not rely on allegations or evidence outside the complaint. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997). Rather, the trial court may review only the complaint and may dismiss the case only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recover. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. Moreover, the court must presume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). We review de novo a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

**{¶34}** In this case, the Board of Health filed a "Complaint for Preliminary and Permanent Injunction" against McCalla on October 19, 2011. (Doc. 1). The complaint was filed pursuant to R.C. 3718.10(A), which reads:

> **[the] prosecuting attorney of the county or the city director of law, village solicitor, or other chief legal officer of the municipal corporation where a violation has occurred or is occurring, upon complaint of the director of health or a board of health, shall prosecute to termination or bring an action for injunction or other appropriate relief against any person who is violating or has violated this chapter, any rule adopted or order issued under it, or any condition of a registration or permit issued under rules adopted under it. The court of common pleas or the municipal or county court in which an action for injunction is filed has jurisdiction to grant such relief upon a showing that the respondent named in the complaint is or was in violation of the chapter or rules, orders, or conditions.**

R.C. 3718.10(A).

**{¶35}** The complaint contained four counts alleging that McCalla was in violation of Ohio Revised Code provisions 3718.011, 3718.10, 3718.08, 3718.99, and claiming that McCalla was in violation of Defiance County regulations 3701-29-04, and 3701-29-02. The complaint alleged, *inter alia*, that McCalla illegally installed a septic tank on the Buckskin Rd. property, and that the septic system was a nuisance as it failed to "comply with the household sewage treatment system rules and regulations [and] endangers the life and the safety of the public due to contamination from this illegal household sewage treatment system." (Doc. 1).

{¶36} Assuming that the above facts are true, as we are directed to do pursuant to our standard of reviewing a motion to dismiss, we cannot find that the trial court erred in failing to dismiss the case for failure to state a claim upon which relief could be granted. The facts as alleged and the cited legal provisions state a colorable claim. Accordingly appellants' third assignment of error is overruled.

*First and Second Assignments of Error*

{¶37} In McCalla's first and second assignments of error, McCalla claims that his administrative remedies had not been exhausted and therefore the trial court lacked jurisdiction to hear the case. McCalla further claims that his due process rights were violated as he was unable to exhaust his administrative remedies.

{¶38} Questions concerning procedural due process are matters of law to be determined de novo on appellate review. *See generally Slorp v. Dept. of Admin Serv*. 10th Dist. No. 97APE08-1136 (Apr. 30, 1998), citing *Univ. Hosp., Univ of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, paragraph one of the syllabus. Procedural due process is guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution. *Ohio Valley Radiology Associates, Inc. v. Ohio Valley Hosp. Ass'n*, 28 Ohio St.3d 118, 125 (1986), quoting *State ex rel. Allstate Ins. Co.*

*v. Bowen* 130 Ohio St. 347 (1936), paragraph five of the syllabus. To satisfy due process, a defendant must have notice of the hearing and have an opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011 (1970).

{¶39} In the case before us McCalla's son John purchased the Buckskin Rd. property having been informed that in order for anyone to reside on the property the septic system would have to be brought into compliance with state and local laws. After John acquired ownership of the property, despite not having a license or a permit to do so, John and McCalla replaced the old septic tank with a new larger septic tank. Following this installation John was notified that his system was still not in compliance with state and local laws. John then applied for a variance with the Board of Health. The Board of Health denied John's Variance request.

{¶40} Subsequently John transferred the Buckskin Rd. property to his father, McCalla. McCalla filed for a second variance with the Board of Health. This time the Board of Health conditionally granted the variance, giving McCalla 90 days to meet the conditions. After allowing McCalla more than 90 days to comply with the conditions in the conditional variance and thus remove the nuisance, the Board of Health filed a complaint against appellants.

{¶41} McCalla now claims that he was not informed of his administrative rights or right to appeal his grant of a conditional variance, and that because of

this, his administrative remedies had not been exhausted and he had been denied due process. Despite McCalla's claims, the Board of Health did not file an appeal from any administrative action wherein McCalla may or may not have been informed of his right to appeal the conditional variance. McCalla's arguments that his administrative rights are implicated here are misplaced.

{¶42} The case before us is predicated on a complaint filed against McCalla alleging various violations of state and local sewage treatment laws. The violations pertaining to this matter included that McCalla was maintaining a public health nuisance. McCalla, and his son John before him, had been notified repeatedly that he needed to get the septic system into compliance with state and local laws to remove that nuisance. This case centers on the injunction preventing that alleged nuisance, and is not related to any matter of administrative remedies as McCalla asserts. Therefore we find that the motion to dismiss was properly overruled and McCalla's due process rights were not violated. Accordingly appellants' first and second assignments of error are overruled.

*Fourth Assignment of Error*

{¶43} In McCalla's fourth assignment of error he argues that the trial court erred in denying him a jury trial. McCalla's jury demand was denied in the trial court's December 13, 2011 judgment entry.

{¶44} The Ohio Supreme Court held in *State ex. rel. Miller v. Anthony*, 72 Ohio St.3d 132 (1995), that Section 5 Article I of the Ohio Constitution "did not preserve the right to a jury trial in a particular cause of action unless the action is one that was recognized as a jury issue at common law." *Anthony* at 136, citing *Digital & Analog Design Corp. v. N. Supply Co.*, 63 Ohio St.3d 657, 661 (1992). The Court went on to hold that the Ohio Constitution did not provide a right to a jury trial in a nuisance abatement action, finding that there is no right to a jury trial on equitable claims for injunction. *Anthony* at 136.

{¶45} In this case, the Board of Health filed a complaint seeking injunctive relief. Particularly, the Board of Health sought a nuisance abatement. Based upon the reasoning in *Anthony*, McCalla was not entitled to a jury trial as he claims. Accordingly appellants' fourth assignment of error is overruled.

*Sixth Assignment of Error*

{¶46} In McCalla's sixth assignment of error, McCalla argues that there was a "per se" taking of his property due to the regulations requiring McCalla to install a compliant septic system. McCalla claims that the regulation "has completely deprived [McCalla of] all economically beneficial use of his property." (Appt. Br. at 21).

{¶47} Both the United States and the Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation. Fifth

and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. The United States Supreme Court has consistently held that the application of land-use regulations to a particular piece of property is a taking only if either the regulation is constitutionally invalid in that it does not substantially advance legitimate state interests or if it denies an owner economically viable use of his land. *State ex rel. Shemo v. Mayfield hts.*, 95 Ohio St.3d 59, 63, 2002-Ohio-1627, citing *United States v. Riverside Bayview Homes, Inc.* 474 U.S. 121, 126, 106 S.Ct. 455 (1985), citations omitted.

**{¶48}** To determine the extent to which a regulation has deprived land of economic viability, we must compare the value of the property that has been taken by the regulation against the value of the property that remains. *Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 U.S. 470, 497, 107 S.Ct. 1232 (1987). If, in doing so, the regulation has deprived the property of *all* economic value, a compensable taking results unless the regulation prevents a use that creates a nuisance. *Natl. Lime & Stone Co. v. Blanchard Twp.*, 3d Dist. Nos. 6-04-04, 6-04-05, 2005-Ohio-5758, ¶ 44, citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886 (1992).

**{¶49}** While McCalla claims that he has been deprived of *all* economically beneficial uses of his property, there is absolutely nothing in the record establishing that McCalla cannot use the property for storage or for farmland (as

McCalla owns and farms the surrounding land). Thus there are still potentially viable economical uses for the property. Moreover, the trial court found that McCalla's violation of the regulation was a public health nuisance, which would create an exception even if there was a taking. Furthermore, there is still value to the home, being that the estimated cost for repair of the system was $12,000 and according to McCalla the property is apparently valued at least at $40,000.[3] For all of these reasons, appellants' sixth assignment of error is overruled.

*Seventh Assignment of Error*

{¶50} In McCalla's seventh assignment of error, McCalla argues that the trial court erred in levying an excessive fine not in accordance with the Ohio Revised Code. In support of his argument, McCalla cites *State v. Tri-State Group, Inc.*, 7th Dist. No. 03-BE-61, 2004-Ohio-4441, ¶¶ 102-104, wherein the court utilized four factors in deciding whether a given fee is appropriate.[4]

{¶51} At the outset, we note that the $365,000 fine against McCalla was *jointly agreed to* by the parties at the dispositional hearing. After the trial court determined McCalla's septic tank to be a public health nuisance, the trial court delayed disposition pending a hearing on several issues, one of which was the

---

[3] There is no estimate of the property's value in the record but McCalla, in his brief, states that the value of the property is $40,000.
[4] Those factors included: the harm or threat of harm posed to the environment by the violations, the level of recalcitrance, defiance, or indifference demonstrated by the violator of the law, the economic benefit gained by the violation, and the extraordinary costs incurred in enforcement. *Tri-State Group* at ¶ 104, citing *State ex rel. Brown v. Dayton Malleable*, 1 Ohio St.3d 151, 153 (1982).

appropriate amount of a fine. The record in this case unambiguously demonstrates that the parties agreed to the imposition of a $365,000 fine.

{¶52} The trial court's January 17, 2012 judgment entry contained the following language:

> **WHEREUPON, after much discussion between the Parties, and with the Judge in his chambers, a mutual Agreement was reached as to the remaining issues to be determined by the Court.**
>
> **WHEREUPON, the Judge recited the mutual Agreement of the Parties on the record, with all Parties individually acknowledging that they concurred with the terms of said Agreement. It is now, therefore, ORDERED ADJUDGED, and DECREED, and the Court finds the following:**
>
> **\* \* \***
>
> **That the parties stipulate to the imposition of the following penalties for [McCalla's] violation of R.C. § 3718.011(A)(1), and under the Defiance County Sewage Treatment System Regulations: a $1,000.00 fine for each day of the violation, pursuant to R.C. §§ 3718.08 and 3718.99, for the past year (365 days) for a <u>TOTAL CUMULATIVE FINE OF $365,000.00</u>[.]**

(Emphasis in original.) (Doc. 28). The language in the court's judgment entry accurately reflected the dispositional hearing. At the dispositional hearing, the court stated,

> **THE JUDGE: \* \* \* [T]he parties are willing to agree that the amount of the – the accumulative amount of those Civil Penalties would be three hundred and sixty five thousand dollars.**
>
> **\* \* \***

> **It is also my understanding that the parties have entered into an agreement that the Board of Health will forego collection of that amount provided that [McCalla] complies with the injunction[.]**
>
> **\* \* \***
>
> **Is that an accurate and complete recitation of the agreement or the arrangement?**
>
> **MR. HERMAN:          Yes, Your Honor.**
>
> **THE JUDGE:          Mr. Holtsberry appears on behalf of [McCalla].  Mr. Holtsberry, is that an accurate and complete recitation of the agreement?**
>
> **MR. HOLTSBERRY:     I Believe it is, Your Honor.**

(Jan. 11, 2012 tr. at 3-4).

{¶53} Despite the fact that McCalla stipulated to the fine, McCalla appeals the amount, stating that the amount of the fine was inappropriate and contrary to law. "It is axiomatic, however, that a party may not appeal a judgment to which it has agreed." *Wells v. Spirit Fabricating Ltd.*, 8th Dist. No. 67940, 1995 WL 527541, citing *Jackson v. Jackson*, 16 Ohio St. 163 (1865), at paragraph one of the syllabus; *In re Annexation of Riveredge Twp. to Fairview Park*, 46 Ohio App.3d 29, 31-32 (8th Dist.1988); *Madorsky v. Madorsky*, Cuyahoga App. No. 57517, unreported, (Sept. 27, 1990).  Having entered into a mutual agreement to the amount of the fine to the court, McCalla is estopped from challenging this amount on appeal. *See Trautwein v. Runyon*, 5th Dist. No. 94-CA-E-11-032, 1995

WL 498951 (holding that appellants, having stipulated a fact before the trial court, could not challenge it on appeal).

{¶54} Furthermore, as the trial court implied in its entry and in the dispositional hearing, the fine imposed in this case could have been "greater" than the mutually agreed amount of $365,000. (Jan. 11, 2012, tr. at 3). Pursuant to R.C. 3718.99, McCalla could have been fined $1,000 per day for being in violation of R.C. 3718.08. Revised Code 3718.08 states that "[n]o person shall violate this chapter, any rule adopted or order issued under it, or any condition of a registration or permit issued under rules adopted under it." Therefore, pursuant to the code, any violation of the corresponding chapter of the revised code could result in a fine of up to $1,000 for each day of the violation. As the violation continued for well in excess of a year the fine could potentially have been far greater. The fine was thus well within the parameters of the Revised Code. For all of the foregoing reasons, appellants' seventh assignment of error is overruled.

*Fifth Assignment of Error*

{¶55} In McCalla's fifth assignment of error, McCalla argues that the trial court misapplied provisions of the Ohio Revised Code in deciding this case, namely R.C. 3718.02(A)(3), R.C. 3718.011, and R.C. 3718.012.

{¶56} R.C. 3718.02(A)(3) reads

**(A) The public health council, in accordance with Chapter 119. of the Revised Code, shall adopt, and subsequently may amend**

-21-

**and rescind, rules of general application throughout the state to administer this chapter. Rules adopted under division (A) of this section shall do at least all of the following:**

**(3) Prescribe standards for the siting, design, installation, operation, monitoring, maintenance, and abandonment of sewage treatment systems that may be used in this state and for the progressive or incremental alteration or repair of an existing sewage treatment system or the progressive or incremental installation of a new system to replace an existing sewage treatment system. The rules shall be adopted so as to establish a preference for the repair of an existing sewage treatment system, when technically and economically feasible, rather than its replacement with a new system. The standards shall include at a minimum all of the following:**

{¶57} R.C. 3718.011 reads,

**(A) For purposes of this chapter, a sewage treatment system is causing a public health nuisance if any of the following situations occurs and, after notice by a board of health to the applicable property owner, timely repairs are not made to that system to eliminate the situation:**

**(1) The sewage treatment system is not operating properly due to a missing component, incorrect settings, or a mechanical or electrical failure.**

**(2) There is a blockage in a known sewage treatment system component or pipe that causes a backup of sewage or effluent affecting the treatment process or inhibiting proper plumbing drainage.**

**(3) An inspection conducted by, or under the supervision of, the environmental protection agency or a sanitarian registered under Chapter 4736. of the Revised Code documents that there is ponding of liquid or bleeding of liquid onto the surface of the ground or into surface water and the liquid has a distinct sewage odor, a black or gray coloration, or the presence of organic matter and any of the following:**

**(a) The presence of sewage effluent identified through a dye test;**

**(b) The presence of fecal coliform at a level that is equal to or greater than five thousand colonies per one hundred milliliters of liquid as determined in two or more samples of the liquid when five or fewer samples are collected or in more than twenty per cent of the samples when more than five samples of the liquid are collected;**

**(c) Water samples that exceed one thousand thirty e. coli counts per one hundred milliliters in two or more samples when five or fewer samples are collected or in more than twenty per cent of the samples when more than five samples are collected.**

**(4) With respect to a discharging system for which an NPDES permit has been issued under Chapter 6111. of the Revised Code and rules adopted under it, the system routinely exceeds the effluent discharge limitations specified in the permit.**

**(B) With respect to divisions (A)(1) and (2) of this section, a property owner may request a test to be conducted by a board of health to verify that the sewage treatment system is causing a public health nuisance. The property owner is responsible for the costs of the test.**

{¶58} R.C. 3718.012 reads,

**[a] sewage treatment system that was in operation prior to the effective date of this section shall not be required to be replaced with a new sewage treatment system under this chapter or rules adopted under it and shall be deemed approved if the system does not cause a public health nuisance or, if the system is causing a public health nuisance as provided in section 3718.011 of the Revised Code, repairs are made to the system that eliminate the public health nuisance as determined by the applicable board of health.**

**{¶59}** Citing the above provisions, McCalla specifically argues that the complaint did not allege that McCalla's septic "system" was a "public health nuisance," and that the trial court did not consider the law's preference for making alterations to a current system rather than replacing it along with the economic impact accompanying it.

**{¶60}** First, addressing McCalla's claim regarding the complaint, we have already found the complaint to be sufficient. The Board of Health's complaint repeatedly characterized the septic situation on McCalla's property as a "nuisance" and cited various provisions of the revised code, the administrative code and Defiance County regulations. Revised Code section 3718.011, cited as being violated multiple times in the Board of Health's complaint, specifically addresses "public health nuisance situations" and thereby the complaint incorporates numerous references to a "public health nuisance." *See* R.C. 3718.011. Therefore, McCalla's argument that a "public health nuisance" was not alleged in the complaint is without merit.

**{¶61}** Second, McCalla claims the trial court erred by failing to take into account what McCalla argues is the law's preference for making alterations to a current system in lieu of replacing it and that the trial court failed to take into account the economic impact of requiring McCalla to bring his system up to code.

{¶62} At the outset we note that the trial court made no specific findings as to whether McCalla would need to replace his old system or merely have it repaired as he suggests. The trial court simply held that an injunction was in effect on the property "until a proper and legal home sewage treatment system is installed." (Doc. 22). Under this holding McCalla was not required to install a new system rather than repair his old system, he was simply required to have a properly functioning system—something that he was fully aware of when he took on the property in the first place.

{¶63} McCalla argues essentially that the economic impact of requiring McCalla to bring his "system" up to code would be unduly burdensome and that the trial court did not take this into account. McCalla claims that the Buckskin Rd. property is worth $40,000 and that installing the system would cost him at least $12,000, making the cost of repairing/replacing his septic "system" up to half of the property's value.[5] (Appt. Br. 19-20).

{¶64} Despite McCalla's claims, the record does not contain an actual valuation of the Buckskin Rd. property. The State did enter the purchase agreement between Guilford and McCalla's son into the record showing that the sale price of the property was $40,000, but there is no estimate of the Buckskin Rd. property's value. (State's Ex. C). Nothing in the record establishes whether

---

[5] In his brief, McCalla originally states that it would cost at least $12,000 to get his system up to code, and then he uses a figure of $20,000 for the repair/replacement without substantiating that figure in the record.

$40,000 was the value of the Buckskin Rd. property with or without a working septic system (and the septic system was not functioning at the time McCalla's son purchased the property, a fact that McCalla and McCalla's son were aware of).

{¶65} Thus the value McCalla cites in his brief, if we accept that figure as the actual value of the Buckskin Rd. property at the time of purchase, could be merely the "as-is" value of the Buckskin Rd. property. There is nothing in the record that would establish a value of the Buckskin Rd. property with a working septic system. This fact makes McCalla's argument increasingly speculative as a $12,000 system might increase the value of the Buckskin Rd. property substantially. Therefore there is not enough evidence in the record to illustrate any type of economic hardship on McCalla on a property that he acquired knowing that the septic system needed repaired/replaced, and on a property that may see a direct increase in value with a working septic system.

{¶66} Despite McCalla's arguments it seems that McCalla himself might not have considered the economic impact of purchasing a property that he knew had a non-compliant septic system. Rather than remedy the problem on the property, McCalla chose to seek a variance. Even after the variance was conditionally granted McCalla did not comply with it.

{¶67} Finally, it would seem from the trial court's holding that the trial court was legitimately concerned with the potential health risks of the public

health nuisance. The trial court heard testimony from Prigge and Rebecca Fuggit about the danger inherent in allowing someone to reside on the Buckskin Rd. property without having a properly functioning septic system. At the dispositional hearing the court stated

> **I realize there was testimony that you don't perceive there to be any problem, but in no way shape or form can that system be used. It is in fact – not only is this a matter of statutory definition, it is a real life * * * Public Health Nuisance and thank God nothing bad has happened either to the tenant or to the neighbors or anything like that today, but common sense tells you that you just can't operate that kind of a thing. It's dangerous and that's the Court's principle motivation * * *.**

(Jan. 11, 2012 tr. at 5-6).

{¶68} For all of these reasons, appellants' fifth assignment of error is overruled.

*Eighth Assignment of Error*

{¶69} In his eighth assignment of error, McCalla argues that the trial court's application of R.C. 3718.011 is retroactive and therefore violates Article II Section 28 of the Ohio Constitution.

{¶70} At the outset we note that McCalla failed to raise this Constitutional issue at the trial court level. The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v.*

*Awan*, 22 Ohio St.3d 120 (1986), at syllabus. Although we retain the discretion to consider a waived constitutional argument, *State v. Rice*, 3d Dist. Nos. 1-02-15, 1-02-29, 1-02-30, 2002-Ohio-3951, ¶ 7, we decline to do so here.

{¶71} Accordingly, appellants' eighth assignment of error is overruled.

{¶72} For the foregoing reasons appellants' assignments of error are overruled and the judgment entries of the Defiance County Common Pleas Court are affirmed.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**