[Cite as *Betscher v. Governing Bd. of Putnam Cty. Educational Serv. Ctr.*, 2015-Ohio-4727.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

JACKSON BETSCHER,

    PLAINTIFF-APPELLANT,          CASE NO. 12-15-05

    v.

GOVERNING BOARD OF
PUTNAM COUNTY EDUCATIONAL
SERVICE CENTER,             O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Putnam County Common Pleas Court
Trial Court No. 14CV184

Judgment Reversed and Cause Remanded

Date of Decision: November 16, 2015

APPEARANCES:

    *Brian J. DeSantis* for Appellant

    *Elizabeth A. Braverman* for Appellee

**PRESTON, J.**

{¶1} Plaintiff-appellant, Jackson Betscher ("Betscher"), appeals the judgment of the Putnam County Court of Common Pleas dismissing his complaint against defendant-appellee, the Governing Board of the Putnam County Educational Service Center ("PCESC"). For the reasons that follow, we reverse.

{¶2} On October 26, 2014, Betscher filed his complaint against the PCESC alleging that the PCESC failed to provide him "statutorily-mandated paid vacation leave as required by [R.C.] 3319.084." (Doc. No. 1). In his complaint, Betscher alleged that he was "a non-teaching employee under a written continuing contract pursuant to [R.C.] 3319.081" from April 5, 2011 through December 31, 2013. (*Id.*). Attached to his complaint are three employment contracts executed by the PCESC, the Putnam County Commissioners ("Commissioners"), and Betscher. The first contract ("contract one"), which was effective from April 5, 2011 through August 14, 2012, states that Betscher would work two days each week for the Commissioners as a County Administrator and work "[a]ll other times * * * per the terms of his employment agreement with the [PCESC]." (*Id.*). The second contract ("contract two"), which was effective from August 15, 2012 through August 14, 2013, is similar to contract one, but provided that Betscher would work two and one half days each week for the Commissioners and work "[a]ll other times * * * per the terms of his employment agreement with the [PCESC]." (*Id.*).

The third contract ("contract three"), which was effective from August 15, 2013 through December 31, 2013, also provided that Betscher would work two and one half days each week for the Commissioners and work "[a]ll other times * * * per the terms of his employment agreement with the [PCESC]." (*Id.*).

{¶3} On February 19, 2015, the PCESC filed a motion to dismiss Betscher's complaint under Civ.R. 12(B)(6). (Doc. No. 7). On March 3, 2015, Betscher filed a memorandum in opposition to the PCESC's motion to dismiss and a motion for leave to file an amended complaint. (Doc. No. 8). On March 16, 2015, the PCESC filed a reply memorandum in support of its motion to dismiss. (Doc. No. 9).

{¶4} On March 20, 2015, Betscher filed a motion for leave to file an amended complaint instanter, which the trial court granted. (Doc. Nos. 10, 13). Betscher's amended complaint was filed on March 25, 2015. (Doc. No. 13). On April 15, 2015, the PCESC filed a motion to dismiss Betscher's amended complaint under Civ.R. 12(B)(6). (Doc. No. 17). On April 29, 2015, Betscher filed a memorandum in opposition to the PCESC's motion to dismiss his amended complaint. (Doc. No. 20). On May 8, 2015, the PCESC filed a reply memorandum in support of its motion to dismiss Betscher's amended complaint. (Doc. No. 21). On May 21, 2015, the trial court granted the PCESC's motion to dismiss Betscher's amended complaint after concluding that Betscher's

employment contracts are invalid, and, as such, Betscher, was not a full-time employee of the PCESC and not entitled to compensation for vacation benefits under R.C. 3319.084. (Doc. No. 22).

{¶5} On June 10, 2015, Betscher filed his notice of appeal. (Doc. No. 26). He raises one assignment of error for our review.

### Assignment of Error

**The Trial Court Erred in Dismissing Plaintiff's Complaint Pursuant to Civ. R. 12(B)(6) for Failure to State a Claim Upon Which Relief Can be Granted.**

{¶6} In his assignment of error, Betscher argues that the trial court erred in granting the PCESC's Civ.R. 12(B)(6) motion to dismiss. Specifically, while Betscher argues that the trial court was correct in finding that he was a non-teaching employee of the PCESC, he argues that the trial court erroneously concluded that the PCESC lacked legal authority to contract with the Commissioners prior to the enactment of R.C. 3313.846. Therefore, Betscher argues that the trial court erred in interpreting his employment contracts to mean that he was a part-time employee of both the PCESC and the Commissioners.

{¶7} "A [Civ.R. 12(B)(6)] motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests whether the complaint is sufficient." *Bd. of Health of Defiance Cty. v. McCalla*, 3d Dist. Defiance No. 4-12-07, 2012-Ohio-4107, ¶ 33, citing *State ex rel. Hanson v. Guernsey Cty. Bd.*

*Of Commrs.*, 65 Ohio St.3d 545, 548 (1992). "In order for a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief.'" *McBroom v. Safford*, 10th Dist. Franklin No. 11AP-885, 2012-Ohio-1919, ¶ 7, quoting *Grey v. Walgreen Co.*, 8th Dist. Cuyahoga No. 96846, 2011-Ohio-6167, ¶ 3, citing *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144 (1991).

{¶8} "We review de novo a judgment on a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *McCalla* at ¶ 33, citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. "Under de novo analysis, we are required to 'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'" *McBroom* at ¶ 9, quoting *Grey* at ¶ 3, citing *Byrd v. Faber*, 57 Ohio St.3d 56 (1991).

{¶9} "When reviewing a Civ.R. 12(B)(6) motion, courts are confined to the allegations contained in the complaint." *Cooper v. Highland Cty. Bd. Of Commrs.*, 4th Dist. Highland No. 01CA15, 2002-Ohio-2353, ¶ 9, citing *State ex*

*rel. Alford v. Willoughby Civil Service Comm.*, 58 Ohio St.2d 221, 223 (1990). "But courts may consider written instruments if they are attached to the complaint." *Id.*, citing *First Michigan Bank & Trust v. P. & S. Bldg.*, 4th Dist. Meigs No. 413, 1989 WL 11915, *4 (Feb. 16, 1989), citing *Slife v. Kundtz Properties, Inc.*, 40 Ohio App.2d 179 (8th Dist.1974), paragraph two of the syllabus. "However, courts should avoid interpreting these written instruments at the pre-trial stage unless the instrument is clear and unambiguous on its face." *Id.*, citing *Slife* at 184-185. *See also Natl. City Mtge. Co. v. Wellman*, 174 Ohio App.3d 622, 2008-Ohio-207, ¶ 21 (4th Dist.) (concluding that, because the parties' agreement was clear and unambiguous on its face that the parties agreed "to waive any and all claims, no set of facts would have allowed appellants to maintain a counterclaim against appellee"). "If the written instrument is unclear or ambiguous, trial courts are forced to look outside the pleadings in order to interpret the written instrument." *Cooper* at ¶ 9.

{¶10} "If a motion to dismiss refers to, or depends on matters outside the pleadings, the motion to dismiss must be converted to a motion for summary judgment under Civ.R. 56(C)." *Id.*, citing Civ.R. 12(B) and *State ex rel. The V. Cos. v. Marshall*, 81 Ohio St.3d 467, 470 (1998). "If the court converts the motion to dismiss to a motion for summary judgment, the parties must be given

notice and a reasonable opportunity to present all of the available evidence that Civ.R. 56(C) permits." *Id.*, citing *Marshall* at 470.

{¶11} In his complaint, Betscher alleges that he was "a non-teaching employee under a written continuing contract pursuant to [R.C.] 3319.081,"[1] and, as a non-teaching employee of the PCESC, Betscher alleges that he is entitled to vacation leave under R.C. 3319.084. (Doc. No. 1). R.C. 3319.084 provides, in relevant part, "In all school districts each *full-time* non-teaching school employee * * *, shall be entitled * * * to vacation leave[.]" (Emphasis added.) In its motion to dismiss, the PCESC argues that Betscher was not a full-time, non-teaching employee of the PCESC. Instead, the PCESC argues that Betscher was an "other administrator" within the meaning of R.C. 3319.02 and not entitled to vacation-leave benefits.

{¶12} Because the trial court was required to accept as true all of the factual allegations in Betscher's amended complaint and draw all reasonable inferences in his favor when it considered the PCESC's motion to dismiss, the trial court assumed without deciding that Betscher was a non-teaching employee of the PCESC. However, the trial court concluded that Betscher was not entitled to vacation leave under R.C. 3319.084 because he was not a *full-time* employee of the PCESC. In determining whether Betscher was a full-time employee of the

---

[1] R.C. 3319.081 governs contracts for non-teaching "school-district" employees. *State ex rel. Tempesta v. City of Warren*, 128 Ohio St.3d 463, 2011-Ohio-1525, ¶ 37.

PSCEC, the trial court appears to have concluded that Betscher's employment contracts are unclear and ambiguous. In particular, the trial court stated, "The contract does not spell out the exact status of the relationship." (Doc. No. 22). Therefore, to determine whether Betscher's employment contracts made him a full-time employee of the PCESC and assigned to the commissioners or a part-time employee of the PCESC and the Commissioners, the trial court applied R.C. 3313.846.[2] The trial court interpreted R.C. 3313.846 to bar the PCESC from contracting with any entity other than a school district prior to September 29, 2011. After making that conclusion, the trial court concluded that there was no set of facts that would allow Betscher to recover vacation leave under R.C. 3319.084 because the PCESC did not have legal authority to contract with the Commissioners at the time Betscher's first contract was executed, and, therefore, the only way to interpret Betscher's employment contracts is to conclude that Betscher was a part-time employee of the PCESC and the Commissioners. (*Id.*).

{¶13} We conclude that the trial court erred in granting the PCESC's motion to dismiss since there is a set of facts, consistent with Betscher's complaint, which would allow him to recover—that is, Betscher's allegation that he was a full-time, non-teaching employee is a set of facts under which he *could* recover. Because the trial court's decision to grant the PCESC's motion to dismiss

---

[2] In what appear to be typographical errors in its entry, the trial court noted that it was applying "R.C. 3318.864" and "R.C. 3313.864." (Doc. No. 22).

-8-

focuses on the interpretation of Betscher's employment contracts, we will first review Betscher's employment contracts.

{¶14} "The principal goal in construing contract language is to effectuate the intent of the parties." *Beard v. New York Life Ins. & Annuity Corp.*, 10th Dist. Franklin No. 12AP-977, 2013-Ohio-3700, ¶ 13, citing *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, ¶ 29. "'The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" *Id.*, quoting *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly* at 132. "A contract term is ambiguous if it is susceptible to more than one reasonable interpretation." *St. Marys v. Auglaize Cty. Bd. of Commrs.*, 3d Dist. Auglaize No. 2-05-17, 2006-Ohio-1773, ¶ 20, citing *U.S. Fidelity and Guaranty Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55 (2d Dist.1998) and *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11-12.

{¶15} Betscher's employment contracts[3] state, in relevant part:

---

[3] Contracts one, two, and three are substantially similar. (*See* Doc. No. 1). Substantive differences between the contracts are footnoted.

This management contract is made and entered * * * by and between PUTNAM COUNTY EDUCATIONAL SERVICE CENTER and the BOARD OF PUTNAM COUNTY COMMISSIONERS and Jack Betscher (hereinafter referred to as "Employee").

WHEREAS, the PUTNAM COUNTY EDUCATIONAL SERVICE CENTER currently employs Jack Betscher; and,

WHEREAS, the BOARD OF PUTNAM COUNTY COMMISSIONERS is desirous of retaining the services of Jack Betscher as the County Administrator; and

WHEREAS, the PUTNAM COUNTY EDUCATIONAL SERVICE CENTER and the BOARD OF PUTNAM COUNTY COMMISSIONERS wish to allow Jack Betscher to maintain employment with the PUTNAM COUNTY EDUCATIONAL SERVICE CENTER and contract his services to the BOARD OF PUTNAM COUNTY COMMISSIONERS;

* * *

1. <u>SERVICES</u>

Employee shall work and provide services as the County Administrator for the BOARD OF PUTNAM COUNTY

COMMISSIONERS two (2)[4] days per week (these days may be utilized to coincide with each entities [sic] need and are not set each week, but may be moved for scheduling needs). All other times Employee shall work and provide services per the terms of his employment agreement with the PUTNAM COUNTY EDUCATIONAL SERVICE CENTER. * * *

2.   COMPENSATION

The PUTNAM COUNTY EDUCATIONAL SERVICE CENTER shall invoice the BOARD OF PUTNAM COUNTY COMMISSIONERS for Employees [sic] services to the BOARD OF PUTNAM COUNTY COMMISSIONERS * * *.

The BOARD OF PUTNAM COUNTY COMMISSIONERS shall be responsible for all travel and on the job expenses incurred by Employee arising out of and in the course of his duties as County Administrator and shall reimburse Employee directly * * *.

---

[4] Contract two provides that Betscher will serve as the County Administrator "two (2 ½) [sic] days per week" and Contract three provides that Betscher will serve as the County Administrator "two and a half (2 ½) days per week."   (Doc. No. 1).

> The BOARD OF PUTNAM COUNTY COMMISSIONERS shall also pay and/or be responsible for any unemployment expenses * * *.[5]

(Emphasis sic.) (Doc. No. 1). Contract three further provides, "At the end of the term the BOARD OF PUTNAM COUNTY COMMISSIONERS have expressed interest in the direct employment of Jack Betscher and would like to contract days back to the PUTNAM COUNTY EDUCATIONAL SERVICE CENTER." (Emphasis sic.) (*Id.*).

{¶16} We agree with the trial court that Betscher's employment contracts are unclear and ambiguous regarding his employment status—that is, Betscher's employment contracts can reasonably be interpreted to mean that he was a full-time employee of the PCESC and assigned to the Commissioners or that he directly contracted as a part-time employee with the PCESC and the Commissioners.

{¶17} For instance, Betscher's employment contracts could reasonably be interpreted to mean that he was a full-time employee of the PCESC and assigned two to two and one half days per week to the Commissioners because, for example, the contracts state (1) that Betscher will "work and provide services per the terms of his employment agreement with the [PCESC]" at "[a]ll other times,"

---

[5] Contract three does not provide that the Commissioners will pay or be responsible for any of Betscher's unemployment expenses. (Doc. No. 1).

(2) that the PCESC was to invoice the Commissioners for the time Betscher worked for the Commissioners, and (3) that contract three indicates that the Commissioners "expressed interest in the direct employment of Jack Betscher and would like to contract days back to the [PCESC]." Yet, Betscher's employment contracts could reasonably be interpreted to mean that he was a part-time employee of the PCESC and the Commissioners because, for example, (1) Betscher was a party to the contracts, (2) the "whereas provisions" of the contracts could be interpreted to mean that the PCESC was permitting Betscher to seek outside employment with and "contract his services to" the Commissioners two to two and one half days per week, (3) the Commissioners paid Betscher directly for any travel and on-the-job expenses that he incurred from his duties as County Administrator, and (4) the Commissioners were responsible, under contracts one and two, for Betscher's unemployment expenses.

{¶18} Concluding that a contract is unclear and ambiguous permits a court to review extrinsic evidence to determine the intent of the parties. Ordinarily, concluding that a contract is unclear and ambiguous and reviewing extrinsic evidence to determine the parties' intent constitutes reversible error at the Civ.R. 12(B)(6) stage, unless the trial court converts the motion to dismiss to a motion for summary judgement and provides the parties notice and a reasonable opportunity to present Civ.R. 56(C)-type evidence. However, the trial court neither considered

extrinsic evidence nor converted the PCESC's motion to dismiss to a motion for summary judgment.

{¶19} Rather, the trial court concluded that the interpretation that Betscher was a full-time employee of the PCESC is barred by statute; therefore, there is only one reasonable interpretation of his employment contracts—that he was a part time-employee of the PCESC and the Commissioners and, as a result, there is no set of facts that would allow Betscher to recover. That is, the trial court concluded that because the first contract was executed April 5, 2011, more than five months prior to R.C. 3313.846's effective date, Betscher could be considered only a part-time employee of the PCESC and a part-time employee the Commissioners. We disagree.

{¶20} The trial court's conclusion that the contracts could only mean that Betscher was a part-time employee of the PCESC and the Commissioners because R.C. 3313.846 prohibited the PCESC from contracting with the Commissioners is erroneous. R.C. 3313.846 provides:

> The governing board of an educational service center may enter into a contract with any political subdivision as defined in section 2744.01 of the Revised Code, not including school districts, community schools, or STEM schools contracting for services under section 3313.843, 3313.844, 3313.845, or 3326.45 of the Revised

Code, under which the educational service center will provide services to the political subdivision. Services provided under the contract and the amount to be paid for such services shall be mutually agreed to by the parties and shall be specified in the contract. The political subdivision shall directly pay an educational service center for services specified in the contract. The board of the educational service center shall file a copy of each contract entered into under this section with the department of education by the first day the contract is in effect.

The ability of the PCESC to contract with the Commissioners was not impossible prior to R.C. 3313.846's September 29, 2011 enactment. Rather, as we explain below, at least R.C. 3313.17 authorized the PCESC to contract with the Commissioners.

{¶21} The concept of an educational service center was established by the General Assembly in 1995 to replace county school districts. *See, e.g.*, 1999 Ohio Atty.Gen.Ops. No. 99-023 ("An educational service center is the successor to what was formally known as a county school district."), citing Am.Sub.H.B. No. 117, 1995 Ohio Laws File 28; *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, ¶ 4 ("An 'education service center' * * * is a statutory creation."). *See also* 2014 Ohio Atty.Gen.Ops. No. 2014-012

("An educational service center is administered by a governing board, the successor to a county board of education."), citing R.C. 3313.01, R.C. 3313.055, and 2010 Ohio Atty.Gen.Ops. No. 2010-028. An "educational service center" is considered a school district, school board, or board of education, whenever in R.C. Title 33 the terms "school district," "school board," or "board of education" are used "'without expressly referring to boards governing city, local, exempted village, or joint vocational school districts, or some specific combination thereof.'" 2014 Ohio Atty.Gen.Ops. No. 2014-012, quoting R.C. 3311.055. "Therefore, 'the governing board of an educational service center has many of the same powers and duties as the board of education of a school district.'" *Id.*, quoting 2005 Ohio Atty.Gen.Ops. No. 2005-033. In describing those powers and duties, the Ohio Attorney General noted that educational service centers have "general powers to contract." 1999 Ohio Atty.Gen.Ops. No. 99-023, citing R.C. 3313.17 and 3313.36-3313.371.

{¶22} Specifically, R.C. 3313.17 provides:

The board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued, *contracting and being contracted with*, acquiring, holding, possessing, and disposing of real and personal property, and taking and holding in trust for the use and benefit of such district, any grant

or devise of land and any donation or bequest of money or other personal property.

(Emphasis added.) Thus, because R.C. 3313.17 does not expressly refer to "boards governing city, local, exempted village, or joint vocational school districts, or some specific combination thereof" in describing a "board of education," R.C. 3313.17 indicates that educational service centers may contract and be contracted with.

{¶23} In discussing the powers of Ohio boards of education, the Supreme Court of Ohio stated, "Ohio boards of education are creations of statute, and their authority is derived from and strictly limited to powers that are expressly granted by statute or clearly implied therefrom." *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, ¶ 9, citing *Schwing v. McClure*, 120 Ohio St. 335 (1929), syllabus. Similarly, the Supreme Court noted, "In enacting R.C. 3313.17, the General Assembly gave boards of education the discretionary authority to contract with other parties in order to administer Ohio's system of education." *Id.* at ¶ 10. These principles also apply to educational service centers. *Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 122 Ohio St.3d 557, 2009-Ohio-3628, ¶ 17 ("A school district board of education is a statutorily created entity composed of individual members responsible for governing a school district *or educational service center*. It is described as 'a

body politic and corporate.'"), citing R.C. 3311.055 and 3313.17. Indeed, in discussing the General Assembly's intent in enacting R.C. 3313.17, the Supreme Court concluded that the General Assembly authorized boards of education, which, as we stated above, are responsible for governing a school district or educational service center, the discretionary authority to contract with *other* parties—that is, an educational service center's discretionary authority to contract with other parties is not limited to only contracting with other school districts.

{¶24} Therefore, the trial court erred in dismissing Betscher's amended complaint for failing to state a claim upon which relief can be granted. Specifically, the trial court erred in applying R.C. 3313.846. The PCESC was authorized by at least R.C. 3313.17 to contract with the Commissioners. Thus, the trial court erred by relying on R.C. 3313.846 to conclude that Betscher was a part-time employee of the PCESC. Accordingly, a determination whether Betscher was a full-time employee of the PCESC and assigned to the Commissioners or a part-time employee of the PCESC and the Commissioners is necessary. However, the answer to that question depends on the interpretation of Betscher's unclear and ambiguous employment contracts, which exceeds the scope authorized by Civ.R. 12(B)(6) and necessarily involves factual issues outside Betscher's amended complaint that may be addressed at trial or, if appropriate, at the summary-judgment stage. Moreover, not only does Betscher's full-time or part-

time employment status need to be ascertained, but also necessary is a determination whether he was a "non-teaching employee" under R.C. 3319.081, an "other administrator" under R.C. 3319.02, or some other type of employee.

{¶25} Betscher's assignment of error is sustained.

{¶26} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, P.J. and SHAW, J., concur.**

**/jlr**